UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Javonnie W.,[1]                                )     C/A No. 9:24-cv-05134-BHH-MHC
                                               )
                    Plaintiff,                 )
                                               )     **REPORT AND RECOMMENDATION**
        v.                                     )
                                               )
Leland Dudek,[2] Acting Commissioner of the    )
Social Security Administration,                )
                                               )
                    Defendant.                 )
                                               )
_____        )

        Plaintiff Javonnie W. (Plaintiff) filed the Complaint in this action pursuant to 42 U.S.C.

§ 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision

denying his claim for Disability Insurance Benefits (DIB) under the Social Security Act (Act).

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the

ALJ's decision be affirmed.

## I.      BACKGROUND[3]

        Plaintiff applied for DIB on June 14, 2021, alleging disability beginning June 13, 2021.

R.pp. 82, 141–47, 185–91. Plaintiff's claim was denied initially and upon reconsideration, and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[3] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 7.

Plaintiff then requested a hearing before an ALJ. R.pp. 66, 82. A hearing, at which Plaintiff, represented by counsel, and a vocational expert testified, was held by telephone on June 2, 2023. R.pp. 45–65. The ALJ thereafter denied Plaintiff's claim in a decision issued on June 27, 2023, finding that Plaintiff was not disabled from the alleged date of onset through the date of the decision. R.pp. 32–40. On July 24, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R.pp. 1–3. This appeal followed.

Because this Court writes primarily for the parties who are familiar with the facts, the Court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II.     APPLICABLE LAW

### A.  Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g). Under this section, judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the "statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

### B.  Social Security Disability Evaluation Process

To be considered "disabled" within the meaning of the Social Security Act, a claimant must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. § 404.1520; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry his burden, he is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id.*

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since his alleged disability onset date. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet the regulations' severity and duration requirements. *Id.* § 404.1520(c). At step three, the ALJ considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P (the "Listings") or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC).[4] *Id.* § 404.1520(d), (e); *Lewis*, 858 F.3d at 861.

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform his past relevant work. 20 C.F.R. § 404.1520(e), (f). If the ALJ finds the claimant capable of performing his past relevant work, he is not disabled. *Id.* § 404.1520(f). If the requirements to perform the claimant's past relevant work exceed his RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id*.

---

[4] The RFC is "the most the claimant can still do despite physical and mental limitations that affect [his] ability to work." *Mascio*, 780 F.3d at 635 (internal quotation marks and citations omitted).

### III.     ADMINISTRATIVE FINDINGS

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Plaintiff was disabled from the date of his application for benefits. R.pp. 32–40. The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant engaged in substantial gainful activity during the following periods: June 2021 through September 2021 (20 CFR 404.1520(b) and 404.1571 *et seq.*). . . .

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: hereditary spastic paraplegia and right lateral epicondylitis (20 CFR 404.1520(c)). . . .

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a): He can lift and/or carry 10 pounds occasionally and five pounds frequently. He can stand and/or walk two hours, no more than 20 minutes at a time. He can sit six hours. He can frequently push and/or pull with the upper extremities, bilaterally. He can occasionally push and/or pull with the lower extremities, bilaterally. He can perform occasional balancing, occasional stooping, occasional kneeling, no crouching, occasional crawling, and no climbing of ramps or stairs. He can perform no climbing of ladders, ropes or scaffolds. He can frequently reach, bilaterally; frequently handle, biltaterally; continuously finger, bilaterally; and continuously feel, bilaterally. He must avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery. . . .

7. The claimant is capable of performing past relevant work as a technical support representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). . . .

8. The claimant has not been under a disability, as defined in the Social Security Act, from June 13, 2021, through the date of this decision (20 CFR 404.1520(f)).

R.pp. 34–40.

## IV.    DISCUSSION

Plaintiff argues that remand is warranted because (1) the ALJ failed to adopt mental limitations in the RFC finding or explain why such limitations were omitted, and (2) the ALJ failed to evaluate the vocational impact of Plaintiff's use of a hand-held assistive device. ECF No. 9 at 2–15. For the reasons that follow, the undersigned recommends that the ALJ's decision be affirmed.

### A. Plaintiff's Mental Limitations

Plaintiff argues that it was legal error for the ALJ to omit Plaintiff's mental functional limitations from the RFC finding without explanation. *Id.* at 13. The Commissioner responds that the ALJ's assessment of Plaintiff's mental impairments was sufficiently explained, and the conclusions were supported by substantial evidence. ECF No. 10 at 9. Plaintiff replies that, even if mild mental limitations do not restrict a claimant's ability to work, an ALJ must explain why credible mental limitations do not affect such an ability in each specific case. ECF No. 13 at 1.

### 1.  Accounting for Mental Limitations: Technique

An ALJ must use the special technique supplied in 20 C.F.R. § 404.1520a to evaluate cases involving mental impairments. After the ALJ concludes the claimant has a medically-determinable mental impairment, the ALJ is required to rate the degree of the claimant's functional limitation as none, mild, moderate, marked, or extreme[5] based on "the extent to which [his] impairment(s)

---

[5] A marked limitation means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d). An extreme limitation means the individual is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00(F)(2)(e). In

interfere with [his] ability to function independently, appropriately, effectively, and on a sustained

basis" in the broad functional areas of (1) understanding, remembering, or applying information;[6]

(2) interacting with others;[7] (3) concentrating, persisting, or maintaining pace;[8] and (4) adapting

or managing oneself.[9] 20 C.F.R. § 404.1520a(b), (c)(2), (3), (4). Should the ALJ conclude the

claimant's mental impairments do not meet or are not equivalent in severity to any listed mental

disorders, he is to consider the impairments in assessing the claimant's RFC. 20 C.F.R.

§ 404.1520a(d).

"RFC is an assessment of an individual's ability to do sustained work-related physical and

mental activities in a work setting on a regular and continuing basis." *Titles II & XVI: Assessing*

*Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July

2, 1996).[10] A claimant's RFC, which represents "the most [he] can still do despite [his]

limitations," must be based on all the relevant evidence in the case record and should account for

---

contrast, if a claimant's functional limitations are rated at "none" or "mild," the ALJ will generally
conclude that the claimant's impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). "Moderate"
limitations indicate that a claimant's "functioning in this area independently, appropriately,
effectively, and on a sustained basis is fair," while "[m]ild" limitations indicate that a claimant's
functioning "is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00F.2(b), (c).

[6] This first area of mental function refers to the abilities to learn, recall, and use information to
perform work activities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(1).

[7] This second area of mental function refers to the abilities to relate to work with supervisors, co-
workers, and the public. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(2).

[8] The third area of mental function refers to the abilities to focus attention on work activities and
stay on task at a sustained rate. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(3).

[9] The final area of mental function refers to the abilities to regulate emotions, control behavior,
and maintain well-being in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4).

[10] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration
of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not
carry the force of law but are "binding on all components of the Social Security Administration,"
20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating social security cases.
*See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

all of the claimant's medically determinable impairments, including those that are not severe. *Id.*; 20 C.F.R. § 404.1545(a).

In evaluating an RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "'Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work' of which he believes the claimant to be capable." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Monroe*, 826 F.3d at 179).

2.  Determining Plaintiff's Mental Limitations: Evaluation

At Step Two of the five-step sequential evaluation process to determine whether Plaintiff is disabled, the ALJ stated the following:

> [T]he undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.
>
> The claimant's medically determinable mental impairment of depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. . . .
>
> The medical records show that the claimant is prescribed medication for the depressive disorder by his primary care provider (Exhibit 5F). He reported that his symptoms were stable, and his mood improved with medications. Findings from examinations consistently show that the claimant was alert, oriented, and cooperative with appropriate mood and affect. He has not required specialized mental health treatment or more aggressive treatment. Additionally, the claimant stated that he has no problems caring for his personal needs (Exhibit 4E). He prepares simple meals, cleans, mows the grass with a riding lawnmower, goes outside, drives, shops, can handle finances, watches television, spends time with others, does not need reminders, has no problems getting along with others, follows instructions well, and finishes what he starts. The conservative and effective treatment for the depressive disorder, the lack of specialized mental health treatment, and the claimant's reported activities demonstrate no more than mild limitations in the "paragraph B" criteria.

> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)). . . .
>
> The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.
>
> The prior administrative findings that the claimant does not have a severe mental impairment are persuasive because they are consistent with and supported by the conservative treatment prescribed by the claimant's primary care provider, the reported improvement in symptoms, the unremarkable findings from examinations, the lack of specialized mental health treatment, and the claimant's reported activities (Exhibits 2A and 3A).

R.pp. 35–36.

### 3. RFC Determination: Analysis

In determining Plaintiff's RFC, the ALJ did not refer to Plaintiff's depressive disorder or any related treatment, other than a general reference to mental impairments in his description of the two-step process to evaluate Plaintiff's symptoms. R.p. 37 ("In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms."). Plaintiff asserts that the ALJ's failure to account for his mental limitations within the RFC is basis for remand. ECF No. 9 at 2.[11] This argument is unsuccessful for three reasons.

---

[11] The Commissioner argues Plaintiff did not allege disability because of mental health conditions, in essence arguing he cannot now take issue with a finding related to this impairment. *See* ECF No. 10 at 4. However, a claimant may object to a condition being insufficiently accounted for when the disability was part of the record. *See* 20 C.F.R. § 404.1520(a)(3). Plaintiff is not arguing that the ALJ improperly determined the severity of his depression by classifying it as non-severe but rather that the ALJ should have accounted for the non-severe impairment in the RFC after noting it at Step Two. *See* ECF No. 9 at 2–3.

First, the mental functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The ALJ determined that Plaintiff had mild limitations in all four areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). R.p. 35. Under the regulations, mild difficulties have little to no effect on a claimant's ability to function independently, appropriately, effectively, and on a sustained basis in the four areas of mental functioning—which corresponds to a finding that the difficulties do not significantly limit the claimant's mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520a(d)(1); *see also Sanford v. Saul*, No. 5:18-CV-2886-KDW, 2020 WL 633743, at *20 (D.S.C. Feb. 11, 2020) ("Under the regulations, mild difficulties are materially different from moderate difficulties, in that mild difficulties have little to no effect on a claimant's concentration, persistence, or pace and correspond to a finding that the difficulties do not significantly limit the claimant's mental abilities to do basic work activities." (cleaned up) (citation omitted)).

Consequently, as these mild limitations have little to no effect on Plaintiff's ability to do basic work activities, the undersigned finds the ALJ did not err by not specifically accounting for them in the RFC determination. *See Morgan v. Saul*, No. 1:19-CV-00003-FDW, 2020 WL 290870, at *4 (W.D.N.C. Jan. 21, 2020) ("[A] mild incapacity is not required to become an RFC requirement. It is only required that the ALJ discuss the incapacity and determine whether it is severe enough to affect the functioning of the claimant. Here the ALJ did exactly that."); *Perry v. Colvin*, No. 2:15-CV-01145, 2016 WL 1183155, at *4 (S.D.W. Va. Mar. 28, 2016) ("The less functional limitation the ALJ determines a given mental impairment to impose on an individual's ability to work at step two, the less will be the need for the ALJ to consider such impairments in the ultimate RFC assessment."); *Platt v. Colvin*, No. CIV.A. 9:13-2435-BHH, 2014 WL 7192373,

at *4 (D.S.C. Dec. 17, 2014) ("The plaintiff complains that the ALJ did not explain what limitations the depression caused. Apparently, the ALJ found none. And, the plaintiff has not recommended any, different than what the RFC already reflects. The ALJ specifically stated that he considered the combined effect of all of the plaintiff's impairments, both 'severe and non-severe'[], and such consideration is sufficient.").

Plaintiff argues that this Court "should adopt the well-reasoned published decision of the Tenth Circuit in *Wells* [*v. Colvin*, 727 F.3d 1061 (10th Cir. 2013)]," and find that an ALJ must specifically account for mental functional limitations in the RFC finding. ECF No. 9 at 11, 3. However, as the Commissioner notes and Plaintiff's request acknowledges, this Circuit does not mandate the approach taken in *Wells*. *See* ECF No. 10 at 16–17. As set forth above, cases in this Circuit have found that the absence of specific RFC limitations for mild difficulties is not an inherent basis for remand. Moreover, part of the basis for review in *Wells* involved a challenge to the ALJ's finding of non-severity of the claimant's mental impairments, which is not the case here. *See Wells*, 727 F.3d at 1068; *see also Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 660 n.5 (4th Cir. 2017) (citing *Wells* for the proposition that failure to follow the special-technique regulation requires remand if claimant has medically determinable mental impairments). Here, Plaintiff has not challenged the ALJ's Step Two analysis and only takes issue with the ALJ's incorporation of that finding at Step Four.

Although the ALJ could have, perhaps, more precisely explained why these mental limitations were excluded from the RFC, the ALJ made clear that Plaintiff suffered only a minimal limitation in his ability to perform basic mental work activities. There is substantial evidence to support the RFC, and the undersigned is able to cross the logical bridge from the evidence to the ALJ's conclusion. *See Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) ("Meaningful review

is frustrated—and remand necessary—only where we are unable to fathom the rationale in relation to evidence in the record." (cleaned up)); *Brown*, 873 F.3d at 267 (noting, to warrant remand, a claimant must either show the ALJ has incorrectly applied a legal standard or show the ALJ's factual findings are not supported by substantial evidence).

Second, and further to this point, much of the evidence in the record concerned Plaintiff's physical limitations, rather than mental limitations. Specifically, testimony at the hearing centered *entirely* on Plaintiff's physical difficulties. *See* R.pp. 45–65. Plaintiff's Counsel asked questions relating only to (1) Plaintiff's trekking pole; (2) treatment for Plaintiff's hereditary spastic paraplegia; (3) motor control issues in Plaintiff's legs and other joints; (4) right shoulder and arm issues; (5) further range of motion issues, including in Plaintiff's neck; and (6) Plaintiff's positioning when seated. R.pp. 54–58. None of the questions from Plaintiff's Counsel—or the ALJ—mentioned any sort of mental difficulties. *See* R.pp. 45–65. After the questioning, Plaintiff's Counsel concluded:

> [Counsel:] Okay. Is there anything that we didn't talk about that's kept you from returning to work?
>
> [Plaintiff:] No, other than that, no, ma'am.

R.p. 58. Thus, the undersigned is not left to guess at why the ALJ determined Plaintiff's depression—a non-severe impairment—did not warrant any mental limitations in the RFC. *See Perry*, 2016 WL 1183155, at *5 ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a claimant's ability to work."); *see also Platt*, 2014 WL 7192373, at *4 ("[T]o the extent the ALJ failed to explicitly discuss any specific piece of evidence, an ALJ is not required to include in his written decision a detailed evaluation of every piece of evidence; rather, he is only required to

'minimally articulate his reasoning so as to make a bridge between the evidence and his conclusions.'" (quoting *Jackson v. Astrue*, No. C/A 8:08-2855-JFA-BHH, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010)) (cleaned up)).

Upon reading the ALJ's opinion as a whole, the ALJ's decision to omit limitations in the RFC related to Plaintiff's mental impairments makes logical sense, is supported by substantial evidence, and does not require remand for further explanation. *See Carol H. v. Kijakazi*, No. 5:20-CV-00035, 2021 WL 3561241, at *13 (W.D. Va. Aug. 12, 2021) ("Read as a whole, [the ALJ's] analysis shows that she acknowledged [claimant] had some 'mild' mental limitations, but concluded, based on the evidence in the record, that they did not more than minimally impact her ability to perform basic work activities."), *report and recommendation adopted*, No. 5:20-CV-00035, 2021 WL 4027199 (W.D. Va. Sept. 3, 2021); *Morgan*, 2020 WL 290870, at *4 (finding the ALJ did not err by not including mental RFC limitations corresponding with the claimant's credited "mild" mental limitations where the ALJ "clearly examined all the available evidence and found [the claimant] had not successfully shown" that RFC limitations were warranted); *Pavlic v. Saul*, No. 1:19-CV-146, 2020 WL 1326217, at *2–3 (M.D.N.C. Jan. 14, 2020) (finding no error where ALJ identified "mild" mental limitations in each of the four functional areas, but included no corresponding limitations in the RFC because ALJ sufficiently explained that "the record as a whole," including claimant's treatment, examination findings, and medical opinions, did not support any mental functional limitations), *report and recommendation adopted*, No. 1:19-CV-146, 2020 WL 1322854 (M.D.N.C. Mar. 20, 2020).

Third and finally, Plaintiff's effort to differentiate his case from others based on the complex nature of his past relevant work ("PRW") as a technical support representative, ECF No. 9 at 5, is unconvincing. Plaintiff argues mental limitations are especially important to his prior

employment in *skilled* work, as opposed to the vast majority of disability cases in which claimants are evaluated for their capacity to perform *unskilled* work. *Id.* Even if Plaintiff had framed this argument as a separate challenge to whether the PRW determination was supported by substantial evidence, which he did not,[12] the undersigned finds that Plaintiff would be unsuccessful.

As set forth above, the ALJ's determination that the RFC did not require mental limitations is supported by substantial evidence. The ALJ subsequently determined at Step Four of the sequential evaluation process that Plaintiff was capable of performing his PRW:

> The claimant worked as a technical support representative from 1999 to 2021 (Exhibit 5E). This work qualifies [as] past relevant work because it was performed within the past fifteen years, at the level of substantial gainful activity, and for a sufficient length of time to learn the duties of the job (Exhibits 8D-11D and 5E and Hearing Testimony). The vocational expert classified the claimant's work as a technical support representative at DOT Code 032-362-010 at the sedentary exertional level with an SVP of 7.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The vocational expert testified that a person with the claimant's vocational profile and residual functional capacity could perform the claimant's past relevant work as a technical support representative.

R.p. 39.

The claimant bears the burden of establishing that he is incapable of performing his PRW. *See Pass*, 65 F.3d at 1203 ("The applicant bears the burden of production and proof during the first four steps of the inquiry." (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). Plaintiff has not presented any evidence or any information from his medical providers suggesting he is unable

---

[12] It is not this Court's burden to develop arguments in a claimant's favor when such arguments should have been presented to this Court for consideration. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting plaintiff has the burden to show that he has a disabling impairment); *see also Hensley on behalf of N.C. v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (noting it is not a court's job "to wade through the record and make arguments for either party," and that a "party must actually develop its argument" when presenting issues to a court sitting in an appellate capacity (citations and internal quotation marks omitted)). Here, because Plaintiff makes this PRW argument as part of his challenge to the ALJ's RFC determination, the undersigned addresses it.

to perform his PRW. *See* R.pp. 380, 388 (medical records mentioning Plaintiff's depression but indicating full functionality: prescribing fluoxetine for daily mood and noting Plaintiff's reports of feeling somewhat isolated due to working from home but otherwise mood symptoms under "good control" and "[m]ood symptoms overall doing well with current medications"), 401 (medical history form completed by Plaintiff on February 1, 2022, in which depression is an option to check as a current medical condition but is unmarked), 408 (Plaintiff reports history of depression but that symptoms are controlled with medication at May 2, 2022, office visit and recurrent major depressive disorder noted by provider as being "in full remission" based on being stable with fluoxetine medication).

The ALJ's determination properly included only those limitations supported by the record. The ALJ made a specific finding of fact as to Plaintiff's RFC, as well as a finding of fact as to the physical and mental demands of Plaintiff's PRW. R.pp. 36–37, 39; *see also Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen.*, SSR 82-62, 1982 WL 31386 (S.S.A. Jan. 1, 1982). Finally, the ALJ concluded that Plaintiff's RFC would allow him to return to his PRW. R.p. 39.

Under the law, this Court's review is confined to determining whether the ALJ employed correct legal standards in making factual findings supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, we must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 587 U.S. at 102 (alteration in original). "[T]he threshold for such evidentiary sufficiency

is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103. The issue then, is not whether this Court agrees with the ALJ's conclusions but whether "more than a mere scintilla" of evidence supports them. *See Hays*, 907 F.2d at 1456.

Based on the record, the undersigned finds the ALJ applied correct legal standards and made findings supported by substantial evidence in concluding that Plaintiff could perform his PRW. *See also Delesline-Meggett v. Saul*, No. 5:20-CV-1411-KDW, 2021 WL 2389779, at *12–14 (D.S.C. June 11, 2021), *aff'd sub nom. Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802 (4th Cir. Nov. 28, 2023). In *Delesline-Meggett*, the court found the ALJ's determination that the claimant could perform her PRW as court clerk (classified as skilled work with a specific vocational preparation rating of 6) was supported by substantial evidence, over claimant's contention that the ALJ "failed to address the significant mental duties of [her] past skilled work." *Id.* The claimant did not list any mental conditions in her form disability report and the RFC contained no mental limitations, but the vocational expert testified that the claimant's PRW required sufficient concentration, persistence, and pace. *Id.* Even so, because the ALJ determined that the claimant's mental impairment caused no more than a minimal limitation in her ability to perform basic mental work activities, relied on the vocational expert's testimony that a person with claimant's physical limitations could meet the demands of the PRW, and because claimant failed to meet her burden of establishing that she was incapable of performing her PRW, the ALJ's determination was properly supported. *Id.* Here, too, Plaintiff has not demonstrated that his past work, with a specific vocational preparation rating of 7, entailed significant mental capabilities that he is unable to perform due to his depression.

In sum, the undersigned finds the ALJ properly assessed Plaintiff's mental impairments.

The ALJ summarized and thoroughly considered the record evidence relating to Plaintiff's depression, which included treatment records, reported symptoms, and medication. R.pp. 35–36 (citing R.pp. 369–91, 192–99, 67–74, 75–81). The ALJ discussed the relevant evidence in sufficient detail and explained the reasoning which supported his determination that Plaintiff's impairment was non-severe. R.pp. 35–36. The ALJ did not include mental limitations in the RFC determination based on a finding that the impairment had minimal impact on Plaintiff's ability to perform basic mental work activities. There is no impediment to judicial review of the ALJ's decision, and remand is not warranted on this basis.

### B.  Plaintiff's Use of Cane

Plaintiff also contends that the ALJ committed reversible error in failing to consider his use of a cane. ECF No. 9 at 13–15. The Commissioner responds that the ALJ evaluated Plaintiff's use of a cane but that he need not have done so because Plaintiff has not provided evidence demonstrating that a cane was medically necessary. ECF No. 10 at 17–18. The undersigned agrees with the Commissioner.

An ALJ need not account for the use of a hand-held assistive device in the RFC assessment unless it is medically necessary. *See Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations . . . .)." *Id.* The mere existence of a prescription for a cane, without more, is insufficient to establish that a cane is medically necessary. *See Castel v. Saul*, No. CV 0:19-596-TMC-PJG, 2020 WL 6217309,

at \*5 (D.S.C. Feb. 20, 2020) ("Courts in the Fourth Circuit have held that even where a claimant is prescribed a cane, substantial evidence may support a conclusion that the cane is not medically necessary, and as such, an ALJ's decision not to consider the impact of a claimant's cane use on his residual functional capacity is not error."), *report and recommendation adopted*, No. 0:19-CV-596-TMC, 2020 WL 5810506 (D.S.C. Sept. 30, 2020); *Scottie J. D. v. O'Malley*, No. 1:23-CV-695, 2024 WL 2746799, at \*5–6 (M.D.N.C. May 29, 2024) (collecting cases), *report and recommendation adopted sub nom. Scottie v. O'Malley*, No. 1:23-CV-695, 2024 WL 3498405 (M.D.N.C. July 22, 2024).

Here, the evidence regarding a prescription for a cane is largely self-reported by Plaintiff. R.pp. 198 (function report completed by Plaintiff indicating he was prescribed a cane on September 1, 2021), 54 (Plaintiff testifying that the walking stick helps with his motoring skills). However, the records reflecting a recommendation by physicians that Plaintiff use a cane do not indicate that the cane is *necessary* to aid in walking or standing; rather they reflect that it *could* aid in his mobility. R.p. 324 (physical therapy report from August 26, 2021: "Trialed trekking pole and hurry cane with patient. Both increased cadence, knee flexion, and stability. Measured 48" height for pole use and instructed in use. Patient demonstrated understanding"); *see also* R.p. 468 (records from July 14, 2022, visit indicating Plaintiff using walking stick on wrong side to sufficiently ambulate and instructing use on opposite side).

Additionally, as cited by the ALJ, records reflect that Plaintiff can ambulate without assistance and with a normal gait. R.p. 38 (citing R.pp. 405 (report indicating Plaintiff appeared well with normal gait, and lacking any mention of use of assistive device, on February 1, 2022), 402 (same on March 18, 2022), 474 (same on June 20, 2022), 466 (same on August 10, 2022)). In the RFC determination, the ALJ noted: "Additional limitations are not warranted based on the

treatment notes documenting that the claimant exercises regularly, findings of normal gait and normal strength, the infrequent treatment, and improvement in symptoms with physical therapy and medications." R.p. 39.

Though some records reflect that Plaintiff "requires [a] cane to walk," R.p. 417, Plaintiff's request that this Court reverse and remand the ALJ's decision asks the Court to go beyond its role. The ALJ pointed to evidence sufficient to support his determination by chronologically working through Plaintiff's medical records and describing that records after his initial use of an assistive device noted he ambulated with normal gait. It is not this Court's job to reweigh the evidence before it. *Hancock*, 667 F.3d at 472.

Plaintiff argues the ALJ's decision should be reversed because "he made no finding as to the medical necessity or vocational impact of [Plaintiff's] assistive devices." ECF No. 13 at 4; *see also* ECF No. 9 at 14 (citing *Randall W.D. v. Saul*, No. 3:19-CV-911, 2020 WL 6939728, at *6 (E.D. Va. Nov. 25, 2020)). The undersigned finds that the ALJ sufficiently explained his reasons for omitting an assistive device to permit review and built a sufficient "accurate and logical bridge from the evidence to his conclusion." *Cf. Monroe*, 826 F.3d at 189; *Mascio*, 780 F.3d at 636–37.

Moreover, courts in this Circuit, including in cases cited by Plaintiff, have recognized that there are some cases where "an ALJ's decision not to discuss a plaintiff's need for an ambulatory device may be harmless—for example when neither treating physician opinions nor the objective medical evidence support plaintiff's need for an assistive device." *See Randall W.D.*, 2020 WL 6939728, at *7. Where, as here, the record does not support the medical necessity of an assistive device, any purported error in not discussing the need for an ambulatory device is harmless. *See Williams v. Berryhill*, No. 5:17-CV-408-D, 2018 WL 4576781, at *4 (E.D.N.C. May 17, 2018) (finding ALJ's lack of explanation as to the medical necessity of plaintiff's cane to be harmless

error when none of plaintiff's treatment providers had opined that a cane was necessary and ample evidence existed in the record showing that plaintiff could ambulate effectively without a cane).

A review of the entire record and the ALJ's decision supports that the ALJ did not err in failing to include accommodations for the use of an assistive device in the RFC and that his decision was supported by substantial evidence. *See Gallman v. Berryhill*, No. CV 5:16-1808-TMC, 2017 WL 3431678, at *4 (D.S.C. Aug. 10, 2017) ("[T]he record contains evidence upon which the ALJ relied that a cane was not medically required—a normal gait and strength and negative straight leg raises.") Accordingly, remand is not warranted on this basis either.

## V.     <u>CONCLUSION</u>

For the reasons set forth above, is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

The parties are referred to the Notice Page attached hereto.

Molly H. Cherry
United States Magistrate Judge

April 21, 2025
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).